## B. GOSE *v.* THE STATE.

1. CHARGE OF THE COURT. — A charge is not defective because it does not formally define the offence, provided it sufficiently instructs the jury upon all the constituents of the offence, and the facts necessary to be established by the prosecution.

2. SAME. — In a trial for theft of a yearling, the State proved the ownership as alleged, the disappearance of the animal from its accustomed range, and the defendant's unauthorized possession and sale of it within four weeks after its disappearance from its range. The defence asked the court to charge that it must be shown that the possession was recent, before they could consider it as an inculpatory fact. *Held,* that the instruction was correctly refused, being neither abstractly correct nor pertinent to the evidence.

3. SAME. — It is not proper to instruct the jury upon matters not put in issue by the pleadings nor mooted by the evidence, — as, for instance, presumption of good character, when the defendant has not put his character in issue.

4. EVIDENCE — FLIGHT. — Facts tending to prove that the defendant fled after the offence was committed are competent evidence for the State.

5. PRACTICE. — If proof of facts not ostensibly connected with the issue be admitted, on the idea that the connection will be shown by other evidence, and this be not done, such proof should, on motion, be excluded from the jury. But if no appreciable consequence can be imputed to such proof, a refusal to exclude it is not material error.

6. NEW TRIAL. — Late at night a jury reported to the court that they could not agree, but the court remanded them for further consultation. Soon afterwards they brought in a verdict of conviction; but, when polled, one of them said "it was his verdict because it had to be." The court informed him that he could not be forced to agree to a verdict, but must say whether the verdict was his or not; whereupon he said, "It is, but not without doubts." The court again required him to say whether the verdict was or was not his, and he then said it was; and the jury collectively

avowing the verdict, it was received by the court. This action of the court was assigned as cause for new trial, braced by affidavits of said juror and two others, intimating coercion. *Held*, that the court below did not err in refusing a new trial.

APPEAL from the District Court of Wise. Tried below before the Hon. J. A. CARROLL.

The indictment was filed October 3, 1878, and charged the appellant with the theft of a yearling, the property of William Renshaw, on the 3d of the preceding April.

Renshaw, testifying for the State, said that he never gave the defendant permission to take or dispose of the yearling. Previous to the theft, it was running on its accustomed range, near John Hogg's, in Wise County, with other cattle belonging to witness. This comprised all of the personal knowledge of the witness pertinent to the case.

John Hogg, for the State, testified that he knew the defendant, and also the yearling in question. He had known it since it was calved, and had milked its mother, keeping it in his lot. Late in the winter, or early in the spring of 1878, he turned it out on the range with other cattle. About the last of March or the first of April, 1878, it was missing. Three or four weeks afterwards, witness found it in the possession of G. W. Penrod. Witness gave no permission to the defendant to take it. The animal was the property of William Renshaw. Witness knew it well, and identified it by the flesh-marks. It was not branded, but had ear-marks, which witness described.

G. W. Penrod, for the State, testified that, between the 10th and 17th of April, 1878, the defendant sold and delivered to him, at his residence in Wise County, a yearling which bore the ear-marks described by the preceding witness, John Hogg. It was afterwards claimed by Hogg for William Renshaw, and witness subsequently bought it from Renshaw. When the defendant delivered the yearling, he

told witness it was his (the defendant's); that he had raised it; and that, if any trouble arose about it, he could prove that it was his property and in his mark, and he would make it all right. When witness bought it, he asked the defendant specially about the title to it. He said he had other cattle to sell, and would deliver them to witness soon; but from that time until the present term of court he saw no more of the defendant.

T. C. Shoemaker, for the State, testified that, during the May term, 1878, of the court, he went to Denison, in Grayson County, about sixty-five miles from Decatur, the county-seat of Wise County, and got the defendant, for whom he "had papers." Witness found him in the calaboose in Denison, and brought him back to Decatur, where he had since been in jail. This was all the testimony of this witness, and the defence moved the court to strike it out, because not connected with the offence on trial, and because it was immaterial and improper. The court overruled the motion, and the defence reserved exceptions. The defence introduced no evidence.

The opinion of the court sets forth so much of the charge to the jury, and of the special instructions asked by defence, as there is occasion for, and discloses all other matters germane to the rulings.

The jury found the defendant guilty, and awarded him two years in the penitentiary. His motion for a new trial was overruled, and he appeals.

*Newton & Sparkman,* for the appellant. The first and second assignments of error we will consider together.

That it is incumbent upon the court, whether asked or not, in all cases of felony, to give in charge to the jury all the law applicable to the case, is too well settled as a rule of law and practice to require argument or authority to sustain it.

But we submit that the charge of the court in this case

is fatally defective, in that it in no manner defines the offence of theft as defined by law. Pasc. Dig., art. 2381; *Smith* v. *The State*, 1 Texas Ct. App. 517.

It will be seen, on examination, that the charge of the court in this case is but a summary statement of facts, which, if affirmatively found by the jury, they were instructed to convict defendant. Such a charge might possibly be comprehended by a skilled lawyer, but we insist that the rights of a defendant require a more full and definite setting forth of the law of the case to jurors, whose peculiar province it is to apply the facts proven to the law given them in charge by the court, and who are so easily misled or confused by such a loose and ambiguous charge as we think the one is in this case. *Lister* v. *The State*, 3 Texas Ct. App. 17; *Miles* v. *The State*, 1 Texas Ct. App. 510; *Ross* v. *The State*, 29 Texas.

It must be a *fraudulent taking* to constitute theft. By this charge, it is difficult to perceive whether the court intended to make a bare taking theft, or a taking with a subsequent fraudulent appropriation, — neither of which constitutes the statutory crime of theft. The *taking* must be fraudulent. Pasc. Dig., art. 2382; *Pitts* v. *The State*, 5 Texas Ct. App. 122.

And, further, as the State's counsel saw fit to put in evidence the claim of ownership made by defendant at the time he should have sold said yearling, it was incumbent upon the court to give in charge to the jury the law applicable to cases where property is taken under a claim of right or ownership, leaving the jury to determine whether the claim of defendant was *bonâ fide*. *Lister* v. *The State*, 3 Texas Ct. App. 17; *Miles* v. *The State*, 1 Texas Ct. App. 510; *Dunham* v. *The State*, 3 Texas Ct. App. 495, and authorities there cited; *Hamilton* v. *The State*, 2 Texas Ct. App. 494; *Dixon* v. *The State*, 2 Texas Ct. App. 530; *Kay* v. *The State*, 40 Texas, 30; *Maxey* v. *The State*, 41 Texas, 524; *Johnson* v. *The State*, 41 Texas, 609.

We submit, further, that defendant's third assignment of error is well taken, and that the court should have given defendant's special charges asked.

A charge is objectionable, though abstractly it gives the law of the offence, if it fail to charge all the law applicable to the particular case then being tried, as developed by the evidence. See authorities above cited. In this case, the defendant's first special charge asked was made eminently necessary by the facts in evidence. For it is shown that the possession of defendant was not recent; and, if not, it is not to be taken as an inculpatory circumstance against him. The jury were the proper ones to decide whether or not the possession of defendant was shown to be recent; hence the necessity of giving to them in charge the law applicable to that particular feature of the case. *Beck* v. *The State*, 44 Texas, 430.

Defendant's second special charge should have been given as a part of the law applicable, not only to the case at bar, but all criminal cases, and was rendered peculiarly proper and necessary in this case by the unwarranted positions taken before the jury by the county attorney in his closing argument. See *Chapman* v. *The State*, 1 Texas Ct. App. 729; *Ring* v. *The State*, 42 Texas, 282; *Kay* v. *The State*, 40 Texas, 30.

Defendant's fourth assignment of error, "that the court erred in refusing to exclude the testimony of T. C. Shoemaker," must, we think, be well taken, inasmuch as the State sought to prove defendant's flight as an inculpatory circumstance, while it is not, within itself, or by any other testimony connected with the case at bar. Defendant could not foresee that the State would fail to connect this evidence, and therefore could not object at the time, but was forced to his motion to strike out the same. It was certainly inadmissible on the ground of immateriality, yet of such a character as is most likely to mislead and prejudice the minds of jurors, and thereby injure the rights of a

defendant, who, if convicted at all, should be only convicted upon *legal* testimony.

We are aware of the rule of practice that the affidavit of a juror will not be received to impeach his verdict. But this rule is not without its exceptions. *Austin* v. *The State*, 42 Texas, 855 ; *March* v. *The State*, 44 Texas. In this case, the affidavits of the jurors do not go to show misconduct upon the part of the jury, or any one of them, but for the purpose of developing the fact that the conduct and remarks of the court did, in fact, have an undue and improper influence on the minds of the jurors. It is to the conduct of the court, and not that of the jury, that defendant excepts. The actions and remarks of the court are set out in a bill of exceptions. We insist that they were not only calculated to mislead and improperly influence the action of the jury, but did in fact have that effect.

This being the case, it is most clearly manifest that the verdict in this case was not, in truth and fact, the verdict of the twelve jurors empanelled and sworn to try the case, but of nine jurors and the district judge. This may be good as a democratic rule, but not as a rule of law and practice under our Code.

But we submit that when the attention of the court was so positively drawn to the fact that his conduct towards and remarks to the jury had unquestionably misled and confused them, and had been the direct means of causing them to render the verdict in the case, over their honest convictions and doubts, and under the impression that they *must* agree to some verdict, it was the duty of the court to have granted defendant a new trial, so that he could have what is guaranteed to him by the Constitution and laws of the State, — " a fair and impartial trial," by a jury of twelve men.

*George McCormick*, Attorney-General, for the State.

WINKLER, J.   The indictment charges the appellant with theft of a yearling, the property of William Renshaw, averred to have been committed in Wise County, on April 3, 1878.   At the September term of the District Court, — to wit, on October 8, 1878, — the accused was tried on a plea of not guilty, found guilty by a jury, and his punishment assessed at confinement in the penitentiary for two years, and judgment was entered accordingly.   A motion for a new trial was made and overruled, and this appeal taken.

The following are the errors assigned : —

1. That the court failed to charge the jury " all the law applicable to the case."

2. The court failed to " define the offence of theft," in the charge.

3. Error in refusing to give to the jury special charges asked by the defendant, as shown by bill of exceptions No. 2.

4. The court erred in refusing to exclude the testimony of the witness Shoemaker, as shown by bill of exceptions No. 1.

5. The court erred in his remarks to and conduct towards the jury, as shown by bill of exceptions No. 3.

6. The court erred in receiving and recording the verdict of the jury, as shown by said bill of exceptions No. 3.

7. The court erred in forcing the jury to agree upon a verdict at so late an hour of the night, as shown by said bill of exceptions No. 3.

8. The court erred in making the remarks mentioned in said bill of exceptions No. 3, by which the jurors " Hobson *et al.*" were influenced, as shown by their affidavits attached to the defendant's motion for a new trial.

9. The court erred in entering the judgment of conviction herein.

10. The court erred in overruling the defendant's motion for a new trial.

It is not proposed, in this opinion, to consider separately

the numerous errors assigned in the order presented, but only to so group them together as to present the questions of law involved, and to respond, so far as deemed necessary, to the views presented by counsel in argument, and necessary to a proper determination of the case as here presented by the record.

The first, second, and third supposed errors assigned call in question the sufficiency of the general charge, and the necessity of the charges asked by the accused. It was, unquestionably, the duty of the judge who presided at the trial to give to the jury trying the case such written instructions (it being a felony case, a written charge was required) as that, applying the facts to the law, the jury could determine the question raised by the pleadings, — whether the accused was guilty of the crime charged against him or not. This was properly done by the charge given; which, whilst it did not attempt in so many words to "define the offence of theft," did inform the jury what facts were necessary to be proved in order to warrant the jury in convicting the accused of the offence charged in the indictment, and to which he had pleaded not guilty. The following extract from the charge of the court will show that the jury were thereby properly instructed as to all the constituent elements of the crime of theft as defined in the Code, and as fully as if the article defining the offence had been copied into the charge.

They were instructed as follows on this branch of the subject: "If you believe from the testimony that the defendant, Biddleman Gose, on any day prior to and within three years of the third day of October, 1878, in the county of Wise, and State of Texas, did steal, take, and carry away, from and out of the possession of William Renshaw, the yearling mentioned in the indictment, and that said yearling was the property of said Renshaw, and was taken from the possession of said Renshaw without his consent, by defendant, with the fraudulent intent on the part of the defendant

to deprive the said William Renshaw of the value of said yearling, and to appropriate the same to the use and benefit of the defendant, then you will find the defendant guilty, and assess his punishment,'' etc.   The charge in this respect was sufficient (*Keef* v. *The State*, 44 Texas, 582), and is a sufficient compliance with the requirements of the Code of Procedure, which makes it the duty of the judge to '' deliver to the jury a written charge, in which he shall distinctly set forth the law applicable to the case,'' and whether asked to do so or not.   Art. 594 (Pasc. Dig., art. 3095).

In a subsequent portion of the charge, the jury were properly instructed as to the presumption of innocence, and the reasonable doubt, and were also told that they were the exclusive judges of the credibility of the witnesses.

Of the charges asked by the defendant, and which the judge refused to give, the first is as follows: '' Before the jury can consider the fact of possession of the property charged to have been stolen, as an inculpatory fact, it must be shown that the possession was recent.''   The principle of law enunciated in this instruction is not correct.   Ordinarily, the *fact* is, that statements made by one who is found in possession of property which has been recently stolen may be given in evidence, to be considered by the jury, in connection with the other testimony in the case, in determining as to the guilt or innocence of the accused.   *Watkins* v. *The State*, 2 Texas Ct. App. 73, and cases there cited.   But that is not the question here presented.   The instruction asked did not state the law correctly, nor was it applicable to the facts proved on the trial.   If this was the law, as it was here claimed, any one, if believed, could manufacture evidence which would acquit him of any charge of theft, or any other unlawful acquisition of the property of another.

The substance of the second paragraph of the charge asked by the defendant was embodied in the general charge,

and it was not necessary that it should be repeated. The general charge embraced "every material allegation in the indictment," necessary to be proved, and all that was requisite on the subject of reasonable doubt.

In the third paragraph, the court was asked to charge that "every man's character is presumed to be good until the contrary is shown." We fail to discover that the general character of the accused was involved in the trial of the case. The State could not, and the accused did not, put it in issue; the investigation seems to have been confined to the case on trial; no mention is made of the general character of the accused in the statement of facts. All the presumptions of law which the accused was entitled to under the circumstances were embraced in the general charge, to the effect that "the defendant is presumed innocent until his guilt is established to the satisfaction of the minds of the jury, beyond a reasonable doubt." The judge was not required, and it would have been improper for him, to have encumbered the charge with an issue not made by the pleadings, or arising upon the testimony. There was no error in refusing to give the instructions asked by the defendant.

All the legal principles involved in the fourth, fifth, sixth, seventh, and eighth supposed errors assigned are more clearly and fully presented in the several bills of exceptions alluded to in the several assignments of error, and will be noticed, so far as deemed material, in connection with the bills of exception set out in the transcript.

In bill of exceptions No. 1, it is recited, in substance, that, on the trial, counsel for the prosecution asked the witness Shoemaker if he ever arrested the defendant; to which the witness answered that about last May he (witness) went to Denison, in Grayson County, and got the defendant, who was there in the calaboose. This being all the testimony of said witness, defendant's counsel moved the court to

strike out all of said witness's testimony, because it "had not been connected in any way with the transaction here being inquired into, and was immaterial in itself, and improper;" which the court refused to do. As a matter of practice, the proper motion would have been to exclude the testimony from the jury, instead of moving to *strike it out;* but this is of little moment.

Generally, proof of an isolated, independent fact, not bearing upon the issue being tried, would be inadmissible; and, if admitted on the idea that it would be properly connected by other testimony, and not so connected, it would, on motion, be excluded from the jury. Such questions are largely within the discretion of the court. If the evidence here objected to was introduced to raise the presumption of guilt arising from flight, the court did not err in permitting it to go to the jury, in connection with other testimony, for the consideration of the jury. Whether it was so connected, or not, does not very clearly appear. Whether the testimony was admissible or not, it is not deemed of sufficient importance to have any appreciable value in determining the issue involved, and is not sufficient to cause a reversal of the judgment. *Boon* v. *The State*, 42 Texas, 237.

The second bill of exceptions relates to the charge of the court, and this has already been considered, and the questions raised passed upon herein.

In bill of exceptions No. 3, several questions of practice are presented in the several matters complained of. It appears from the bill of exceptions that the jury had some difficulty in agreeing on a verdict, and became impatient to be discharged from the consideration of the case. On first coming into court, they informed the judge that they could not agree, and being asked whether they disagreed as to matter of law or fact, replied that they disagreed as to matter of fact; and the court declined to excuse them from the further consideration of the case. This seems to have

taken place about forty-five minutes past ten o'clock, P. M. At about eleven o'clock on the same night they again appeared before the court, and informed the court that they had agreed upon a verdict, which was read. And here the bill of exceptions recites: "Whereupon the defendant demanded that the jury be polled; * * * the court ordered the list of the jury to be called, and the name of Neri Hobson being first called, and he being asked, 'Is this your verdict?' answered, 'It is, because it had to be.' The court then informed the juror that he had no power to force any juror to agree to a verdict, and that the juror must say then whether this was his verdict or not; whereupon the juror replied that ' it is, but not without doubts.' The court required the juror to say whether the same was his verdict or not; to which he answered it was. The other jurors answering that it was their verdict, the court then asked the jury collectively if they all agreed to the verdict; which was assented to. The court then approved and received the same. To which action of the court, and the action of the court in telling the jury that some jury must pass upon this case, and as well them as any, and the action of the court in refusing to discharge the jury, and in keeping said jury together at so late an hour, defendant excepts."

In this connection, it may be noticed that there are appended to the motion for a new trial affidavits of the juror Hobson and two others, intimating that they had been coerced into returning an unwilling verdict, by the requirements of the judge. The application for a new trial was overruled. This ruling is the tenth error assigned. The ninth and only remaining error assigned is also in relation to the same subject.

After a careful consideration of the several grounds of complaint set out in the bills of exception and in the motion for a new trial, we are of opinion that the judge acted in the premises within the bounds allowed in the exer-

cise of a proper discretion, and that no such error was committed as would warrant a reversal of the judgment rendered against the appellant. The most remarkable feature is the very commendable patience manifested by the judge in dealing with a refractory jury. The judgment of the District Court is affirmed.

*Affirmed.*